RULE to show cause wherefore a writ of foreign attachment issued at the suit of the Philadelphia, Wilmington and Baltimore Railroad Company against The Kent County Railroad Company, and laid in the hands of William Wilson, garnishee, should not be quashed. *Page 128 
 Gray, for the plaintiff in the rule: The ground alleged and on which the rule to show cause had been granted, was that The Kent County Railroad Company was duly incorporated by a public act of the legislature of this State, as well as by an act of the legislature of the State of Maryland, and was therefore a domestic corporation, existing as such by a law of this State and not a foreign corporation, and that it was consequently not subject to a writ of foreign attachment issued out of this court. Our statute in relation to the writ of foreign attachment against foreign corporations provides that the "writ of foreign attachment may be issued out of the Superior Court of this State against any corporation, aggregate or sole, not created by or existing under the laws of this State, upon affidavit made by the plaintiff or any other credible person, and filed with the prothonotary of said court, that the defendant is a corporation not created or existing under the laws of this State, and is justly indebted to the said plaintiff in a sum of money, to be specified in the affidavit, and which shall exceed fifty dollars." This comprises the first section of the statute, and there is nothing following it which in any manner qualifies or varies it. Rev. Code Amend. 642. The Kent County Railroad Company, which had in the first place been incorporated by an act of the legislature of Maryland, was also afterward incorporated by the same name by an act of the legislature of this State, passed on the 16th day of March, 1865. Del. Laws,Vol. 12, p. 635. And although it was not stated in the enacting clause, as is usual in acts of incorporation, that it was enacted with the concurrence of two-thirds of the members of each branch of the legislature, the omission did not impair or effect the constitutional validity of it. Sedw. on Stat. and Cons. Law 533, note a. For it is presumed to be constitutional unless the journals of the two houses or one of them shows the contrary affirmatively. 13 Wend. 325. And as there was no provision in the act which either directly or indirectly required the stockholders of the company to expressly assent to or accept it, it was a matter of legal presumption that they did in fact assent to and accept it, and as it was also to be presumed that it was for their benefit and advantage. Aug. Ames onCorp. 52; 12 Wheat. *Page 129 
70. And more particularly it is so to be presumed in this case, inasmuch as it is expressly recited in the preamble to the act as a reason for the enactment of it, that the company desired to extend their railroad within the limits of this State, so as to connect it with the Delaware Railroad, and to obtain authority therefor from the General Assembly of this State; and for which purpose it delegates to the company a portion of that high and supreme State prerogative and dominion over the territory of it, termed the eminent domain of the State, for among other powers it confers upon the company the authority to condemn as well as the right to purchase and hold land in this State so far as it may be needed for the uses and objects of it. A corporation is considered as an inhabitant of the State in which it is incorporated; and where, as is sometimes the case, a corporation is chartered by two or more States, it is a domestic corporation in each of them. Drake on Attachments, sec. 80.
Gordon, for the defendant in the rule: The State could not force a charter on any company. In all private or joint stock corporations the charter constitutes a contract between the State and the company, and could only be made with the consent of both parties. And therefore it must be shown that the act of incorporation passed by the legislature of this State was accepted and adopted by the company either by a formal or express resolution or declaration to that effect by the stockholders of it, or by some positive act done or practical step or proceeding taken under the provisions of it by the company since the passage of it as far back as the year 1865, that would unequivocally indicate and imply at least that it had thereby in effect assented to and accepted and adopted it. But no such proof as either kind had been or could be produced in the case. Ang. Ames on Corp., sec. 41.
The party plaintiff in the rule, The Kent County Railroad Company, was originally incorporated by an act of the legislature of Maryland in the year 1856, and afterward by a further act altering and amending it passed in the year 1864, to locate and construct a *Page 130 
railroad from the waters of the Chesapeake Bay or some point on Chester River through Kent County, in that State from which it derived its corporate name, to the boundary line of this State, as appears by the preamble to the act now in question, passed by our legislature in 1865, to incorporate the company in this State also for a particular and specific object in connection with the road to be constructed by it in that county, as further appears from another recital in the preamble and which is as follows: "And whereas, the said Kent County Railroad Company desire to extend the said railroad within the limits of this State so as to unite the same with the Delaware Railroad at some point on the line of said railroad not more than four miles from the place called Townsend, and to obtain authority therefor from the General Assembly of this State." And which is the only reason assigned by the company or the legislature for the enactment of it.
According to the evidence, the company was organized under the acts of the legislature of Maryland, and it could not have been otherwise, since the act of this State makes no provision whatever for the organization of it, as is usual in such acts, but being merely subordinate and supplementary in its nature and purpose to the Maryland acts, and evidently assuming that it had been or would be organized under those acts, it proceeds in the first section to incorporate "the subscribers to the stock of the company, their successors and assigns," by the same name and by that name to have perpetual succession and to be capable in law of purchasing and holding, leasing, mortgaging, and selling, both real and personal estate, to sue and be sued, to make and use a common seal, and to ordain and enforce such bylaws and regulations as they should deem necessary for the government of the corporation, and generally to do all and singular the matters and things and exercise and enjoy all the rights, powers, and privileges properly appertaining to the well being and ordering of the same. By the second section, however, the more definite and specific power is conferred on the company to extend and construct their said railroad within the limits of this State from the point on the line dividing it from the State of Maryland where it should be located by the said company to *Page 131 
the Delaware Railroad at any point not more than four miles from the place called Townsend on said railroad which they might deem advisable and by such route or routes as they might deem most eligible, while all of the powers, rights and privileges conferred by the succeeding sections and provisions of the act have reference only to this special franchise and this specific object of it and which are wholly incident to and depended upon it, and to that portion of the said railroad which was to be extended and constructed within the limits of this State pursuant to the provisions of it. And if any doubt can arise from the broad and general terms employed in the first section as to this constituting in point of fact the paramount and controlling object of the act of incorporation by the legislature of this State, we may have recourse also to the recital in the preamble before stated to so restrain and explain them. 1 Kent's Com. 461; Crespigny v.Wittenoom, 4 T. R. 790. And it must therefore be so considered and construed by us.
It is a fact, however, admitted in the case that, owing to the objection of the Delaware Railroad Company to the location and extension of the road by the route then contemplated by the legislature and the company, so as to connect it with the Delaware Railroad at or near Middletown in this State, no part of it has in fact been located or constructed within the limits of this State; and since for that and other reasons it has not in fact been located and constructed, even in Kent County, Maryland, in the direction of the boundary line of this State any further than to Massey's Cross Roads in that county, from which point, pursuant to an agreement between the two companies, a branch railroad has since been constructed by the former company to the Delaware Railroad at Townsend in this State, and which is now leased to and operated by the latter company, and that it has been so made and constructed according to the understanding of the parties to the agreement, in lieu of that portion of the Kent County Railroad which it was then contemplated and intended to have located and constructed to the boundary line and extended and constructed within the limits of this State as indicated and provided for in it, we are bound to consider and conclude that this necessarily constituted in its legal operation *Page 132 
and effect as an absolute renunciation, not only of their original intention to so extend it, but also of their power to do so under this act without further legislation in this State to authorize it. For the connection of the Kent County Railroad with the Delaware Railroad at Townsend having since been made in the manner stated by agreement between the companies and pursuant to the powers which they possessed for that purpose, has by such substitution superseded the location, extension, and construction of it as specially provided for in this act, and with it the power and authority granted in it for that particular purpose and no other. And furthermore we may remark that it does not appear that the company has ever done anything under the provisions of this act to avail itself of the benefits of it, although ten years at least have elapsed since the passage of it. Besides, it appears that it has never been expressly accepted by the company; and notwithstanding there is no provision in it requiring such an acceptance, and although it has been held in other cases that grants beneficial to corporations as well as to natural persons may be presumed to have been accepted from their action under them, and that in a majority of instances, perhaps, it is rather to be inferred or presumed from the course of conduct of the company afterward than to be expected to be proved by an express act or resolution to that effect, it is manifest from what we have already stated that nothing has been done by the company under this act to constitute even an implied acceptance of it in this case. 1 Redf. on Railways 69;Charles River Bridge v. Warren River Bridge, 7 Pick. 344; Bankof the United States v. Dandridge, 12 Wheat. 64. Indeed, the fact that the company has built no part of the railroad authorized by and provided for in this act, but so much of it as it after-ward concluded to construct has been built in Kent County, Maryland only, and, of course, exclusively under the authority of the laws of that State, absolutely negatives, we think, such an implication.
But we may go further and say that a mere act of incorporation cannot of itself create an existing corporation in point of fact under the laws of this or any other State. The act does not create the corporation but simply authorizes and provides *Page 133 
for the formation of it, and it must afterward be organized and established pursuant to the provisions of it to give it any life or existence in fact as a corporation; and until it is so included with such an organic life or existence the act itself remains practically and in effect but a dead letter. And until the future company authorized and provided for in the act has been duly formed and organized as provided for in it, the corporation to be instituted cannot properly be said to be created or in existence. And, therefore, strictly and literally speaking in the words of our statute in regard to foreign attachments against corporations, Rev. Code Amend. 642, cannot properly be said, perhaps, to have been either created or organized and existing under the laws of this State or the act now in question, but solely under the laws of Maryland previously enacted and which properly provided for the creation and organization of it, whilst it was merely recognized as a corporation already created, organized and existing in that State under the acts referred to in the preamble of this act, then to be sanctioned and recognized under the act of this State, for it simply incorporates as we have before observed, the "subscribers to the stock of that company, their successors and assigns," under the same name and without making any provision whatever for the organization of the company under it in this State. But independent of this strict construction of the words of our statute, which are as follows, "a writ of foreign attachment may be issued out of the Superior Court of this State against any corporation aggregate or sole not created by or existing under the laws of this State, etc,." nothing has ever been done under this act and it has never been in fact accepted either in express terms or by implication by the Kent County Railroad Company, while it certainly has been created and duly organized and established as an existing corporation under the laws of Maryland in the county of Kent in that State, where its president and other officers now reside and always have resided, and where its principal office and place of business is situated and its corporate residence must be considered to be. What ground then can there possibly be for holding under all these facts and circumstances that it is not a foreign, but a domestic corporation of this State within the true and proper meaning of *Page 134 
the words of our statute? We think there is none and the rule must therefore be discharged.